UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3-14-CR-078 JD |
| | ) | |
| MARY RAY | ) | |

## **OPINION AND ORDER**

Now before the Court is a motion in limine in which the defendant, Mary Ray, seeks to exclude evidence of her and her husband's gambling activities from trial. [DE 43]. Ms. Ray has been charged in a superseding indictment with 11 counts. Counts 1 and 2 allege that as an employee of LaPorte County, Indiana, Ms. Ray embezzled, stole, or fraudulently obtained county property, in violation of 18 U.S.C. § 666(a)(1)(A). Counts 3 and 4 allege that in the tax years covered by the previous counts, Ms. Ray materially underreported her income in her tax returns, in violation of 26 U.S.C. § 7206(1).

Counts 5 through 11 charge a distinct wire fraud scheme in violation of 18 U.S.C. § 1343, through which Ms. Ray is alleged to have fraudulently obtained at least $400,000 from her father-in-law. The indictment alleges that Ms. Ray managed her father-in-law's accounts, and that she "illicitly transferred to her accounts and otherwise misappropriated at least $400,000 of her father-in-law's money and thereafter used a large portion of that money to pay for her and her husband's gambling, gambling expenditures, and gambling debts as well as to pay for other personal expenses of the defendant and her husband." [DE 28]. The indictment further alleges that as part of the scheme to defraud, Ms. Ray made various misrepresentations, including misrepresentations about her financial circumstances and about "the extent of [her] gambling and gambling debts and those of her husband." [*Id.*].

By way of background, the government indicates that Ms. Ray worked as a Deputy Auditor of LaPorte County, Indiana, from 2009 through 2012. In this position, she was responsible for recording and depositing money that various departments and agencies would bring into the auditor's office. Those amounts would include cash and checks. The government alleges that Ms. Ray would steal cash, and that she would cover up her thefts by not properly receipting checks, so that the account balances would appear to match the deposits. The government alleges that Ms. Ray did this on approximately 150 days from September 2011 through December 28, 2012, when she left the position. The government further alleges that following her employment with LaPorte, Ms. Ray began stealing money from her father-in-law. Specifically, the government intends to show that Ms. Ray made 56 checks out to herself from her father-in-law's accounts, totaling $358,854.43, and transferred another $137,978.70 in direct bank transfers from her father-in-law's accounts to hers in 2013 and 2014.

During the time period covered by these offenses, Ms. Ray and her husband gambled substantial amounts of money. In 2011 and 2012, they are alleged to have lost $121,935.85 at two area casinos. However, they had declared bankruptcy in 2010 and had few assets, and their income was modest in comparison to their gambling losses. In 2013 and 2014, at which point Ms. Ray and her husband were living off their social security checks and her husband's pension, they accumulated another $222,361.69 in gambling losses. In her terse motion, Ms. Ray seeks to exclude evidence of her and her husband's gambling activities, arguing that it is barred under Rule 404(b) and that it is unduly prejudicial under Rule 403. The government responded to the motion at length, and the defendant submitted a reply. [DE 46, 47]. For the reasons that follow, the defendant's motion is not well-taken, and is denied.

First, the evidence in question is direct evidence of the charged crimes in at least two respects. In Counts 3 and 4, Ms. Ray is charged with materially underreporting her income, so the government will have to prove that Ms. Ray actually received more income than she reported on her returns. One way to do that is by showing that Ms. Ray was spending money in amounts that exceeded her reported income. If she was spending money, she had to have received it somehow, and if the money could not be accounted for through existing assets or other non-income sources, it would represent income. In that respect, Ms. Ray's gambling activities are direct evidence of the amount of income she received during those years. *See United States v. Shrum*, 655 F.3d 782, 786 (8th Cir. 2011) (holding that evidence of a defendant's gambling was relevant to the falsity of the income reported on the tax returns); *United States v. Griffin*, 524 F.3d 71, 82 (2d Cir. 2008) (holding that "testimony regarding [the defendant's] spending habits was highly probative as to whether [the defendant's] tax returns . . . were false"); *United States v. Abodeely*, 801 F.2d 1020, 1025 (8th Cir. 1986) (holding that evidence of gambling activities was relevant because it "indicates a substantial unreported income source necessary to satisfy the losses"). Likewise, Counts 5 through 11 charge Ms. Ray with a scheme to defraud, and allege that in furtherance of that scheme, Ms. Ray misrepresented the extent of her and her husband's gambling and gambling debts. As to these counts, evidence of Ms. Ray's actual gambling activities and debts will be necessary to compare against Ms. Ray's statements on those subjects in order to determine if those statements were fraudulent. Thus, this is direct evidence as to these counts, too.

Second, this evidence is admissible for various other non-propensity purposes that are not subject to Rule 404(b)'s exclusion. Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in

order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (holding that Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning"). Here, Ms. Ray's gambling is probative at least of her motive for committing each of the charged offenses, and her identity as the perpetrator of the thefts.

As to motive, Ms. Ray's gambling losses gave her a substantial motive to commit the charged crimes. The losses were significant, and given Ms. Ray's modest income and assets, gave her strong reason to resort to the sort of conduct at issue here to be able to support them. *See United States v. Morant*, 98 F. App'x 560, 654 (7th Cir. 2004) (holding that the defendant's gambling losses were admissible to establish his motive to commit robberies); *United States v. Mobley*, 193 F.3d 492, 495 (7th Cir. 1999) (holding that the defendants' expenditures were admissible to show their motive to steal from their employer); *United States v. Ellington*, No. 07 CR 846, 2009 WL 1309525, at *7 (N.D. Ill. May 11, 2009) ("Evidence of gambling has been found to be admissible under Rule 404(b) when the question of cash flow is relevant to the defendant's motive."). In addition, to the extent the size of the losses suggest that Ms. Ray was addicted to gambling, the compulsion of that addiction could explain why Ms. Ray would steal from even a close relative.

As to identity, evidence that Ms. Ray was living beyond her legitimate means could suggest that she was the person who received proceeds of the thefts from LaPorte County. If the thefts could have been perpetrated by a number of individuals, evidence that one of those

4

individuals was living beyond their legitimate means tends to make it more likely that that individual was the perpetrator. In that case, the theft provides an explanation that is otherwise lacking for how the individual came by the money being spent, so that spending tends to identify the individual as the culprit. Thus, the relevance of this evidence does not depend on a propensity inference that an individual who gambles is more likely to commit any of these offenses, so it is not automatically excluded under Rule 404(b). Moreover, this evidence has little potential to raise a propensity inference in the first place. Perhaps a juror could view gambling as somehow dishonest or immoral and believe that a gambler thus has a propensity to commit these crimes, but that seems like a stretch.

Furthermore, the probative value of the non-propensity aspects of this evidence is not substantially outweighed by any unfair prejudice, such that it should be excluded under Rule 403. To begin with, the probative value of this evidence is quite strong. As to the wire fraud counts, Ms. Ray is accused of making misrepresentations about her gambling activities, and the government cannot prove that Ms. Ray's statements on that topic were false without offering evidence of her actual activities. As to the tax charges, the gambling losses are also highly probative of whether Ms. Ray actually had more income than she reported on her returns. And as to the embezzlement charges, Ms. Ray denies that she was the individual who took the money from LaPorte County, which makes the identity aspect of this evidence of even greater importance. *See Gomez*, 763 F.3d at 857 (noting that an important factor in the Rule 403 balancing test "is the extent to which the non-propensity factual proposition actually is contested in the case"). In addition, as to all of the charges, Ms. Ray's gambling activities provided a strong motive for her to engage in each of the charged offenses, through which she would have received a financial benefit that could be used for gambling.

5

Conversely, the potential for unfair prejudice is limited. Ms. Ray suggests in her reply brief that this evidence would be prejudicial because there is a stigma to gambling, even where it is legal, and that the evidence could also portray her as an addict. However, the Court finds that the prejudicial value of this evidence is limited. As the government points out, gambling is legal in Indiana, and is becoming ubiquitous and generally accepted in society. Granted, the amounts in which the Rays gambled were large, and thus may carry a more negative connotation than mere recreational gambling. But that aspect of this evidence is not significant enough to substantially outweigh the evidence's probative value. In addition, at the defendant's request, the Court can instruct the jury as to the purposes for which it may properly consider this evidence, which further reduces its prejudicial value. *Gomez*, 763 F.3d at 860 ("Appropriate jury instructions may help to reduce the risk of unfair prejudice inherent in other-act evidence."). And the extent to which any potential juror has strong views against gambling can be explored and addressed during voir dire.

Finally, Ms. Ray raises arguments in her reply brief suggesting that some of the evidence the government intends to admit relative to her gambling is confusing or misleading. The Court declines to address those arguments, though, as they were not the subject of the motion in limine (which only sought to categorically exclude all evidence of gambling) and, being raised for the first time in a reply, the government has not had a chance to respond. However, if the defendant has specific objections directed at particular pieces of evidence, she may raise them at the final pretrial conference or at trial, and the Court will consider them at that time. The Court also notes that, as with any orders in limine, these rulings are preliminary in nature and are subject to change as the case unfolds, particularly if the evidence at trial differs from what was contained in the parties' proffers. *Luce v. United States*, 469 U.S. 38, 41–42 (1984) (An order in limine "is

subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Therefore, the defendant's motion in limine [DE 43] is DENIED.

SO ORDERED.

ENTERED: August 25, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court